SNEDEKER CORPORATION *v.* UNITED STATES (Nc 2720)[1]

REMISSION OF ADDITIONAL DUTY—ERRONEOUS CURRENCY CONVERSION.

Where the invoice stated that prices were in Swiss *francs,* and entrant, believing them to be French, converted them accordingly, it was shown by satisfactory evidence that the resulting undervaluation was not fraudulent, and his petition for remission of the additional duty under section 489, Tariff Act of 1922, should have been granted.

United States Court of Customs Appeals, May 1, 1926

APPEAL from Board of United States GeneralAppraisers, Abstract 50764

[Reversed.]

*Barnes, McKenna & Halstead (Samuel M. Richardson* of counsel) for appellant. *Charles D. Lawrence,* Assistant Attorney General *(Oscar Igstaedter* and *Reuben Wilson,* special attorneys, of counsel), for the United States.

[Oral argument April 20, 1926, by Mr. Barnes and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the Board of General Appraisers denying the petition of appellant for remission of additional duties. The petition was filed pursuant to the provisions of section 489 of the Tariff Act of 1922, the pertinent part of which reads as follows:

SEC. 489. * * * Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a manifest clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the Board of General Appraisers, upon a petition filed and supported by satisfactory evidence under such rules as the board may prescribe, that the entry of the merchandise at a less value than. that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. If the appraised value of any merchandise exceeds the value declared in the entry by more than 100 per centum, such entry shall be presumptively fraudulent, and the collector shall seize the whole case or package containing such merchandise and proceed as in case of forfeiture for violation of the customs laws; and in any legal proceeding other than a criminal prosecution that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same, and forfeiture shall be adjudged unless he rebuts such presumption of fraud by sufficient evidence. * * *

---

[1] T. D. 41590.

It appears from the record in the case that the appellant, acting as agent for an importer, was instructed by the importer to enter certain imported laces at the values stated in the invoices. The prices for the laces in invoice No. 1 were in French *francs*. The prices for the laces in invoice No. 2 were also in *francs*, but, opposite the statement in figures of the total number of *francs*, appeared the following: "*Net-frs. Suisses.*"

The laces described in invoice No. 1 were entered in *francs* and were appraised at the entered values.

The laces covered by invoice No. 2 were entered at *francs* 1,209.37. The entry did not in terms declare whether the value was in French or Swiss *francs*. The correct number of *francs* was stated in the entry. However, immediately following the statement in the entry of the total value in *francs*, appeared the following: ".0540–$65.00." These figures represented a conversion of *francs* into American dollars at the rate of exchange for French *francs*.

Because of the erroneous conversion of Swiss *francs* into American dollars at the rate of exchange for French *francs*, the entered value was advanced by the appraiser.

In regard to his failure to use the proper rate of exchange in converting the Swiss *francs* into American dollars, the clerk who made the entry testified in part as follows:

\*        \*        \*        \*        \*        \*        \*

Q. What was the telephone conversation with regard to the entry, with reference to the value for entry purposes?—A. Mr. Ayres, of Benjamin & Johnes, wished to advise us that the value as shown on the consular invoice was correct. That is as far as he went.

\*        \*        \*        \*        \*        \*        \*

Q. And did you personally make entry of the merchandise on these invoices?—A. Yes, sir.

Q. How did you do it?—A. Why, you mean the full action?

Q. No; what value did you declare, and how did you make your entry?—A. Why, first, I looked at the first consular invoice and verified the value shown on there to be French francs, and went to work and converted that into American money at the French rate of exchange; then on this second invoice, I notice it was in francs, and also, being that it was dated in Paris, I accepted this as French francs.

Q. Was the word "French," or an abbreviation, to indicate that the first invoice was in French francs?—A. I don't know that it actually showed it was French francs on the copy.

Q. Did you, in making entry, notice that the shipment was made, or the sale was made, by the same person in both instances?—A. Yes, sir.

Q. When was your attention first called to the fact that you had made an error in your entry?—A. When I received notice from the office of Mr. Lee.

Q. That is, from the collector, of the advance in value?—A. Yes, sir; that is right.

\*        \*        \*        \*        \*        \*        \*

With reference to the allegation of good faith contained in the petition for remission of the additional duties, the witness said:

\*        \*        \*        \*        \*        \*        \*

Q. Are the facts as stated in this application true, of your own knowledge?—A. Absolutely.

\*   \*   \*   \*   \*   \*   \*

Upon the record, the trial court held that the petition had not been supported by such clear and satisfactory evidence as would justify granting the relief prayed for, and judgment was entered accordingly.

It is claimed by counsel for the appellant that the evidence in the case, while showing that the clerk who made the entry was somewhat careless, was, nevertheless, sufficient to prove that the appellant was acting in entire good faith; and that the error committed by the clerk was excusable under the circumstances and consistent with his sworn declaration of good faith.

The Government contends that the evidence in the case is not sufficient to establish the allegation of good faith in appellant's petition.

In some respects the facts in this case are unusual. The prices in invoice No. 1 were in French *francs.* However, the only statement on this invoice as to the currency of purchase appears opposite the stated total number of *francs* in the following words: "Net Frs. paper." The invoice plainly showed that the merchandise was purchased from the firm of *Maison Eschwege,* of Paris, France. It was correctly assumed by the clerk who made the entry that the *francs* therein mentioned were French *francs.*

Invoice No. 2 was dated two days later at Paris, France. The shipper was the same as in invoice No. 1. At the top of the invoice appeared the following statement: "Bought of Maison Eschwege."

The character of the merchandise was not such as to indicate that it was not purchased in Paris, France.

The correct value of the merchandise in each invoice was stated in the entry in *francs.* There was no statement in the entry as to whether the *francs* were French or Swiss. The clerk, however, converted the *francs* into American dollars and in so doing used the rate of exchange for French *francs.* He was right as to the merchandise covered by invoice No. 1 and wrong as to that included in invoice No. 2. It seems that a proper decision in the case depends upon the motive to be ascribed to the entry clerk in attempting to make a conversion of the currency in the entry. Is his conduct fairly susceptible of the construction that he attempted to deceive the appraiser and thus defraud the revenues of the United States? Or is it more reasonable to conclude that he was attempting to aid the collector in the conversion of the currency of purchase into American dollars? It is quite apparent that he intended to enter the merchandise in French *francs,* but as a matter of fact the entry was actually made in Swiss *francs*; that is the number of *francs* stated in the entry corresponded exactly with the number of Swiss *francs* stated in the invoice. If his action is to be construed as an attempt to deceive the appraiser it

must be presumed that the figures in the entry representing a conversion of the currency were intended for the special observation of the appraiser and not as an aid to the collector in converting the currency of purchase into American dollars in liquidating the entry.

Conversion of the currency of purchase or of the country of exportation into American money, for purposes of liquidation, is the duty of the collector and not that of the appraiser. Section 522 of the Tariff Act of 1922; articles 700 and 745 of the Customs Regulations of 1923.

It was to be presumed, of course, that the appraiser would examine the invoice with sufficient care to make a proper appraisement. How, then, can it fairly be deduced from the evidence that the clerk, by conversion of the currency at the rate of exchange for French instead of Swiss *francs* intended to deceive him? It seems to us to be a possibility so remote as to be incredible; and the other evidence being inconsistent with any theory but that of good faith, the board should have found it satisfactory. We are of opinion that the decision of the court below is contrary to the weight of the evidence, and its judgment is *reversed*.

BLAND, J., concurs in the conclusion.